**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

———————————————————————
                             :

MODUPE WILLIAMS,             :

                  :      CIVIL ACTION

           Plaintiff,     :

                  :

          v.            :      No. 15-4163

                  :

PENNRIDGE SCHOOL DISTRICT, et al., :

                  :

          Defendants.   :

———————————————————————:

**Goldberg, J.**                                      **October 31, 2016**

## <u>MEMORANDUM OPINION</u>

Plaintiff Modupe Williams filed this lawsuit against the Pennridge School District, Pennridge High School Principal Tom Creeden and Pennridge High School "Ninth Grade Principal" Nicholas Schoonover. In the Amended Complaint, Plaintiff alleges race and gender discrimination and retaliation in violation of 42 U.S.C. § 1981, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, Title IX, 20 U.S.C. § 1681(a), the Equal Protection Clause of the Fourteenth Amendment, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Con. Stat. Ann. § 953.

Presently before me is Defendants' motion to dismiss the Amended Complaint. For the reasons that follow, I will grant Defendants' motion.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Amended Complaint alleges the following:[1]

During the 2011-2012 school year, Plaintiff was a ninth grader at Pennridge High School ("Pennridge") and the only African-American student in her grade. On April 4, 2012, Plaintiff began receiving telephone calls from a "private phone number." A white male student at Pennridge was later identified as the owner of the phone number. The caller made harassing remarks, including referring to Plaintiff as a "bitch" and "nigger." Two days later, Plaintiff reported these phone calls to her mother, advising that the caller "was talking about anal sex and oral sex" and that, during these phone calls, Plaintiff could hear other boys laughing in the background. (Am. Compl. ¶¶ 12, 14-17, 26.)

On April 8, 2012, Easter Sunday, Plaintiff's mother, "pretend[ing] to be Plaintiff," answered a phone call from the private number.[2] The caller said his name was "T.K." After about two minutes of T.K. "making inappropriate statements," Plaintiff's mother informed T.K. that she was Plaintiff's mother. T.K. immediately hung up. (Id. at ¶ 18.)

At approximately 10:00 p.m., T.K. called again. He disguised his voice "in an urban or slangish term," and told Plaintiff's mother "[y]ou know us niggers like to fuck in the ass, right?" (Id. at ¶ 19.)

---

[1] When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assume the veracity of all well-pleaded facts found in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). As such, for the purposes of this motion I assume that all facts found in the Amended Complaint are true.

[2] The Amended Complaint refers to April 18, 2012 as "Easter Sunday." (See Am. Compl. ¶ 18.) Given the chronology presented in the Amended Complaint and the fact that Easter fell on April 8, 2012, it appears that April 18, 2012 was a typographical error.

In a letter to Pennridge Principal Creeden dated May 30, 2012, Plaintiff's mother stated that the phone calls in "April 2012" occurred during "Spring Break." This letter is attached to the Amended Complaint as Exhibit A.

Plaintiff's mother immediately notified the Perkasie Police Department who identified the caller and "his accomplices" as white male students from Pennridge. These individuals were "arrested and prosecuted." (Id. at ¶¶ 19, 21.)

On April 10, 2012, Plaintiff's mother reported these incidents to the Ninth Grade Principal Schoonover. Plaintiff's mother played several voice messages left by the caller. She noted that some of the phone calls and messages occurred during school hours and requested that remedial action be taken. Schoonover said he would investigate the matter. (Id. at ¶ 20.)

Following the arrests, Plaintiff "started receiving retaliatory treatment by other [Pennridge] students and from Defendants." On an unspecified date, B.W., a white male student, "started talking in the classroom about the incidents where Plaintiff was subjected to verbal racial and sexual harassment.'" B.W.'s comments were reported to Defendants who failed to take any action. (Id. at ¶¶ 22-23.)

On an unspecified date, a white student asked Plaintiff "[h]ow f***ing drunk were your parents when they named you 'Modupe'?" Although Plaintiff's mother reported this incident which occurred on school property to Defendants, no action was taken. (Id. at ¶ 24.)

On May 2, 2012, Plaintiff's mother had a meeting with Schoonover and a guidance counselor in which they discussed the "racist actions against Plaintiff by Caucasian student[s] and the retaliatory actions by her classmates." (Id. at ¶ 24.) Earlier in the morning, Creeden and Plaintiff discussed these incidents.

3

On May 25, 2012, at a subsequent meeting held to discuss these incidents, Schoonover told Plaintiff's mother that Plaintiff "should consider attending another school if she did not like it at Pennridge and suggested hospitalization until she [felt] she could cope with the students at Pennridge." (Id. at ¶¶ 28-29.)

In the May 30, 2012 letter, Plaintiff's mother catalogued the "incidents of both racial and sexual harassment" that Plaintiff had experienced. In addition to the allegations set forth in the preceding paragraphs, this letter describes the following conduct:

- In the 2010-2011 school year, Plaintiff was a recipient of the "Presidential Award." Plaintiff's name was omitted from the awards ceremony. No one from Pennridge ever apologized for this omission.
- On an unspecified date, another student threw Plaintiff's book bag and took her seat while Plaintiff was in the restroom. When she returned, Plaintiff "was told to leave and to go to the library since no other seats were available." Plaintiff "felt as if the 'black girl' was made to leave a seat that initially was hers to begin with." Although Plaintiff's mother contacted the teacher about the incident, no one ever followed-up with Plaintiff's mother.
- When Plaintiff tried out for the dance team, students sitting in the bleachers laughed at her. Plaintiff burst into tears and told the dance team coach that she would not be returning.
- Plaintiff's mother "was told that [another student] overheard [one of the callers] bragging about his crimes."

(Am. Compl., Ex. A.) Plaintiff's mother concluded the letter with a demand that Pennridge take "immediate remedial action." (Id.)

Plaintiff claims that Defendants failed to take any action in response to any of the foregoing incidents. She further alleges that "as a result of the racial and sexual harassment and retaliation by Defendants," Plaintiff withdrew from Pennridge at the end of the school year. Thereafter, Defendants refused to send Plaintiff's transcripts to her new school despite Plaintiff's mother twice requesting that Defendants do so. (Am. Compl. ¶¶ 31, 35-36.)

The Amended Complaint consists of the following counts: (1) a claim of race discrimination against Pennridge School District in violation of Title VI; (2) a claim of gender

discrimination against Pennridge School District in violation of Title IX, (3) a claim of race and gender discrimination against all Defendants in violation of the PHRA, (4) a claim of race discrimination against Creeden and Schoonover in violation of section 1981, (5) a claim of retaliation against Pennridge School District in violation of Title VI, (6) a claim of retaliation against Pennridge School District in violation of Title IX, (7) a claim of retaliation against all Defendants in violation of the PHRA, (8) a claim of retaliation against all Defendants in violation of section 1981, and (9) a "section 1983 violation" against all Defendants.

## II.     STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[3] The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. To determine the sufficiency of a complaint under Twombly and Iqbal, a court must take the following three steps: (1) the court must "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).

---

[3] In her response in opposition to the motion to dismiss, Plaintiff cites to the "no set of facts" standard from Conley v. Gibson, 355 U.S. 41 (1957). I note that the United States Supreme Court rejected the Conley "no set of facts" standard in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007).

III.   <u>DISCUSSION</u>

Defendants move to dismiss all nine counts of the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, I will grant the motion in its entirety.

a.   <u>Proper Construction of the Motion</u>

Plaintiff urges that, in their motion to dismiss, Defendants have "alleged ridiculous and unsupported facts that are not in Plaintiff's pleading." (Pl.'s Resp. p.4.) As such, Plaintiff contends that I should either disregard these allegations or convert Defendants' motion to dismiss into a motion for summary judgment.

Federal Rule of Civil Procedure 12(d) allows district courts to treat motions under Rule 12(b) as motions for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Rule 12(d) also mandates that the procedures of Rule 56 govern when this conversion occurs, <u>id.</u>, and that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." <u>Rose v. Bartle</u>, 871 F.2d 331, 340 (3d Cir. 1989).

Plaintiff cites to a single instance in which "Defendants inserted new and disputed facts, not alleged in the Amended Complaint." Plaintiff argues that "[n]owhere in the Amended Complaint did Plaintiff state that [the April 2012] calls were made to her 'off-campus' or that it was during Spring Break." (Pl.'s Resp. p. 4.) Plaintiff also urges that Defendants' assertion is contradicted by paragraph twenty-two of the Amended Complaint which states that "some of the phone calls and messages took place during school hours." (Am. Compl. ¶ 20.)

For the assertion that the phone calls occurred during Spring Break, Defendants cite to the letter from Plaintiff's mother to Principal Creeden dated May 30, 2012 which Plaintiff

attached to the Amended Complaint as Exhibit A. (Am. Compl. Ex. A ("During Spring Break in April 2012, four Pennridge students sexually and racially harassed my daughter through a private number."))

Federal Rule of Civil Procedure 10(c) states that a "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." As such, when reviewing a complaint, "a court should consider not only the allegations contained in the complaint itself but also the exhibits attached to it which the complaint incorporates." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994). Further, it is well-settled that "when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cty., 2007 WL 1007968, at *5 (W.D. Pa. Mar. 30, 2007) (collecting cases). However, some courts have limited application of this rule to situations in which the claims are actually predicated on the attached exhibits. See, e.g., N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 455 (7th Cir. 1998) (holding that when an exhibit does not from the basis of the claim "Rule 10(c) does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact").

I conclude that it is not necessary to resolve whether the allegations in the Amended Complaint or the May 30, 2012 letter control. For the reasons discussed below, even if all of the facts contained in the Amended Complaint are assumed to be true and any contradicting facts set forth in the May 30, 2012 letter are disregarded, Plaintiff has failed to state a claim upon which relief can be granted.

b. <u>Counts 1 and 2 – Race and Sex Discrimination under Title VI and Title IX</u>[4]

In Count One of the Amended Complaint, Plaintiff brings a race discrimination claim against Pennridge School District pursuant to Title VI. In relevant part, Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

In Count Two of the Amended Complaint, Plaintiff brings a gender discrimination claim against Pennridge School District pursuant to Title IX which provides, with certain exceptions not relevant here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

Private individuals who bring suits under Title VI or Title IX may not recover compensatory damages unless they show that the defendant engaged in intentional discrimination. <u>Alexander v. Sandoval</u>, 532 U.S. 275, 283 (2001); <u>Franklin v. Gwinnett Cnty. Pub. Schs.</u>, 503 U.S. 60, 74-75 (1992).

A plaintiff may be able to recover damages from a school receiving federal funds where the school fails to address a racially or sexually hostile educational environment. <u>Davis v. Monroe Cnty. Bd. of Ed.</u>, 526 U.S. 629, 650-51 (1999); <u>Saxe v. State Coll. Area Sch. Dist.</u>, 240 F.3d 200, 206 n.5 (3d Cir. 2001) (suggesting that hostile educational environment claims may be

---

[4] The bulk of the conduct described in the Amended Complaint is both sexual and racial in nature. In light of the nature of the allegations and the fact that the same standards govern Plaintiff's Title VI and Title IX claims, <u>see</u> <u>Saxe v. State Coll. Area Sch. Dist.</u>, 240 F.3d 200, 206 n.5 (3d Cir. 2001), I will consider all of the allegations together. That said, even if the allegations pertaining to sex and race discrimination are parsed out and individually considered, the Amended Complaint fails to state a claim under Title VI or Title IX.

cognizable under Title VI).[5] In order to recover in such a case, a plaintiff must demonstrate harassment "that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim students are effectively denied equal access to an institution's resources and opportunities." Davis, 526 U.S. at 631.[6] As such, "[d]amages are not available for simple acts of teasing and name-calling among school children, even where these comments target differences" in gender or race. Id. at 652.

The United States Court of Appeals for the Third Circuit has clarified that intentional discrimination for an actionable Title VI or Title IX claim may be demonstrated through a showing of deliberate indifference. Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 272 (3d Cir. 2014). In order to establish deliberate indifference, "a plaintiff must show that the school district had knowledge of the alleged misconduct and the power to correct it but nonetheless failed to do so." Id. at 273 (citing Davis, 526 U.S. at 645-49.)

Viewed in the light most favorable to Plaintiff, the Amended Complaint does not allege harassment that is so severe or pervasive as to have effectively denied Plaintiff equal access to educational resources or opportunities at Pennridge. As set out below, I reach this conclusion after careful consideration of all of the alleged harassment set forth in the Amended Complaint and the exhibit attached thereto.

---

[5] Subsequent Third Circuit cases have recognized such a cause of action. See, e.g., Whitfield v. Notre Dame Middle Sch., 412 F. Appx. 517, 521 (3d Cir. 2011).

[6] Although Davis concerned sexual harassment under Title IX, the United States Court of Appeals for the Third Circuit has noted that its "reasoning applies equally to harassment on the basis of the personal characteristics enumerated in Title VI and other relevant federal anti-discrimination statutes." Saxe, 240 F.3d at 206 n.5.

The Amended Complaint describes the content of harassing phone calls that Plaintiff allegedly received from other Pennridge students on two occasions.[7] The Amended Complaint states that Plaintiff first received harassing phone calls at an unspecified time on Wednesday April 4, 2012.[8] Even though the May 30, 2012 letter attached as Exhibit A to the Amended Complaint states that these calls took place during Spring Break, for the purposes of this motion, I will assume that school was in session that day. As the Amended Complaint also alleges that the some calls took place during school hours,[9] I will also assume that the April 4, 2012 calls took place during school hours. As such, for purposes of this motion and drawing all inferences in Plaintiff's favor, I will consider that this first set of phone calls occurred on campus and while school was in session. The alleged content of these calls – in which the callers referred to Plaintiff as a "bitch" and "nigger" – is obviously derogatory.

Regarding the second set of phone calls, the Amended Complaint explicitly states that they occurred between 7 p.m. and 10 p.m. on "Easter Sunday." Based on the foregoing, it is clearly alleged that the second series of phone calls occurred during the weekend and at night. Even viewed in the light most favorable to Plaintiff, it is not a reasonable inference from these allegations that the phone calls occurred on school property.

---

[7] It is unclear how many harassing phone calls Plaintiff alleges that she received from other students. If Plaintiff does file a second amended complaint, she should endeavor to describe with more detail the number and nature of the phone calls she received. For example, if the racially and sexually offensive phone calls did occur with frequency and/or at school during the April 8 and 10, 2012 time period, Plaintiff may succeed in alleging harassment that is severe and pervasive.

[8] Although not stated in the Amended Complaint, an almanac, of which I may take judicial notice pursuant to Federal Rule of Evidence 201, reveals that April 4, 2012 fell on a Wednesday.

[9] The Amended Complaint does not specify the nature or content of the calls that allegedly occurred during school hours. In the absence of any such detail, this allegation does not provide any independent factual support to Plaintiff's claims.

The alleged content of the second set of phone calls is also highly derogatory in both sexual and racial terms. However, they took place off-campus and during the weekend. Therefore, the allegations concerning the second set of calls are potentially of somewhat diminished relevance to Plaintiff's claim. See Davis, 526 U.S. at 630 (liability is limited to situations where the school "exercises substantial control over both the harasser and the context in which the known harassment occurs," such as misconduct occurring "during school hours on school grounds").

However, given that this case is still at the pleading stage, I am not prepared to make a determination regarding the probative weight of these allegations or definitively conclude that Pennridge did not exercise "substantial control" over the individuals who placed the second set of phone calls or the context in which they occurred. Drawing all inferences in Plaintiff's favor, I conclude that at this stage the allegations concerning the content of the second set of phone calls can support Plaintiff's hostile educational environment claims under both Title VI and Title IX.

The Amended Complaint also describes several incidents in which students discussed the telephone calls Plaintiff received and the subsequent arrest of the students who are alleged to have placed the telephone calls. While the attention understandably may have made Plaintiff feel uncomfortable or singled out, these incidents cannot plausibly be considered as harassing. Nothing in the Amended Complaint suggests that the students who discussed the telephone calls themselves directed sexually explicit or racially derogatory comments to Plaintiff or that those students voiced support for the callers and/or their message. Nonetheless, to the extent Plaintiff's educational experience at Pennridge was impacted by her peers' ongoing discussion of the phone calls, these allegations provide some additional, albeit limited, support to Plaintiff's claims.

The Amended Complaint also describes several incidents which, without more factual context, appear to be "simple acts of teasing and name-calling among school children." See Davis, 526 U.S. at 651-52. These incidents include the allegations that other students laughed at Plaintiff during a dance team tryout and that another student took Plaintiff's seat and threw her book bag. The Amended Complaint does not adequately allege that the foregoing incidents were racially or sexually motivated nor is there any plausible basis in the Amended Complaint to draw such an inference. Lastly, Plaintiff also alleges that (1) a student once made a rude comment about her name, which could be interpreted as racial in nature, (2) Pennridge omitted her name from an award ceremony, and (3) Pennridge refused to send her transcripts to the school she attended after withdrawing from Pennridge.

Plaintiff cites to Bryant v. Independent School District Number I-38, 334 F.3d 928 (10th Cir. 2003) and Monteiro v. Tempe Union High School District, 158 F.3d 1022 (9th Cir. 1998) in support of her argument that the foregoing allegations are sufficient to state a claim for a hostile educational environment under Title VI.

In Bryant, the United States Court of Appeals for the Tenth Circuit concluded that the plaintiff alleged sufficient harassment to make out a racially hostile educational environment. 334 F.3d at 933. The Tenth Circuit described the allegations in the Bryant complaint as follows:

> This is a case where students, and possibly teachers, intentionally acted in a racially discriminatory way toward other students. This is a case where the principal was aware of the racial slurs, graffiti inscribed in school furniture, and notes placed in students' lockers and notebooks. This is a case where Caucasian males were allowed to wear T-shirts adorned with the confederate flag, swastikas, KKK symbols, and hangman nooses on their person and their vehicles. This is a case where students and parents complained to the principal about the racist environment and the principal did not attempt to remedy the situation. The principal affirmatively chose to take no action

Id. at 932-33.

In <u>Monteiro</u>, the United States Court of Appeals for the Ninth Circuit noted that the plaintiff alleged that the assignment of two books which used the term "nigger" numerous times exacerbated an already hostile educational environment.[10] <u>Monteiro v. Tempe Union High Sch. Dist.</u>, 158 F.3d 1022, 1034 (9th Cir. 1998). In that case, the plaintiff had further alleged that her "ninth-grade daughter and other similarly situated African–American students attended a school where they were called 'niggers' by white children, and where that term was written on the walls of the buildings in which they were supposed to learn civics and social studies." <u>Id.</u>

Plaintiff correctly notes that, like <u>Bryant</u> and <u>Monteiro</u>, the Amended Complaint alleges that students directed highly offensive racial epithets including the term "nigger" at her. However, unlike the allegations before me, <u>Bryant</u> and <u>Monteiro</u> involved the repeated use of racial epithets over extended periods of time and conduct which occurred on-campus and in front of school officials. The duration and nature – i.e. the pervasiveness and severity – of the harassment alleged in <u>Bryant</u> and <u>Monteiro</u> is not comparable to the allegations before me.

Rather, I conclude that the Amended Complaint does not describe harassment that rises to the level of severe or pervasive. Consistent with <u>Bryant</u> and <u>Monteiro</u>, other courts have found allegations regarding the use of epithets sufficient where they were used over a substantial period of time and with frequency. <u>See</u> <u>Fennell v. Marion Indep. Sch. Dist.</u>, 804 F.3d 398, 409 (5th Cir. 2015) ("racially offensive remarks made every few months over three years [is] sufficient to raise a genuine dispute of whether a hostile environment exists"); <u>DiStiso v. Cook</u>, 691 F.3d 226,

---

[10] In <u>Monteiro</u>, the Ninth Circuit "adopted a three-element framework, based on a Department of Education investigative guidance notice. . . . One year after <u>Monteiro</u>, however, the Supreme Court held that a recipient of federal funding can be liable for student-on-student sex-based harassment under Title IX if the recipient was deliberately indifferent. <u>Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.</u>, 526 U.S. 629, 650, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). Since <u>Davis</u>, courts of appeals presented with Title VI student-on-student harassment claims have applied the deliberate indifference standard from <u>Davis</u>, rather than the <u>Monteiro</u> framework." <u>Fennell</u>, 804 F.3d at 408.

243 (2d Cir. 2012) (use of the word "nigger" eight to fifteen times over a school year raised a triable question of fact as to whether the name-calling was severe or pervasive). Here, however, the conduct allegedly involving the use of racial and sexual epithets – the two sets of phone calls – occurred over a relatively short four day period and a portion of this conduct occurred off-campus and on the weekend.[11]

Lastly, the conduct that is alleged to have occurred after the phone calls ceased provides little additional factual support for Plaintiff's Title VI and Title IX hostile educational environment claims. Even taking into consideration Plaintiff's youth, the Amended Complaint's allegations are insufficient. See Davis, 526 U.S. at 651 (quoting Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 82 (1998) (whether conduct rises to the level of actionable harassment "'depends on a constellation of surrounding circumstances, expectations, and relationships,' including, but not limited to, the ages of the harasser and the victim and the number of individuals involved")). As such, the conduct alleged taken as a whole is not so severe or pervasive as to plausibly suggest that Plaintiff was denied equal access to educational benefits or opportunities at Pennridge.

Obviously, my conclusion should not be interpreted as condoning the conduct that is alleged to have occurred in this case. The alleged content of the phone calls that occurred in April of 2012 is vile, especially when directed at a teenager. However, I am bound to follow controlling circuit precedent which dictates that the Amended Complaint does not state a claim upon which relief could be granted.

---

[11] If Plaintiff is able to amend her complaint to describe the duration, nature, and frequency of the calls and text messages she received with more detail, it is possible that the calls and text messages will rise to the level of severe and pervasive harassment necessary to state a claim.

c.  Count 3 – Race and Gender Discrimination Under the PHRA

In Count Three of the Amended Complaint, Plaintiff brings race and gender discrimination claims against all Defendants pursuant to the PHRA. Noting that Plaintiff's claims under the PHRA are identical to her claims under Title VI and Title IX, Defendants urge that the PHRA claims should be dismissed for the same reasons as Plaintiff's Title VI and Title IX claims.

The PHRA prohibits discrimination in "employment, housing and public accommodations" on the basis of "race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability." 43 Pa. Con. Stat. Ann. § 953. In dicta, the Third Circuit has noted that the PHRA "has not been construed . . . to create a cause of action for 'hostile environment' harassment of a public school student." Saxe, 240 F.3d at 217 n.4.

However, to the extent that such a claim is cognizable under the PHRA, it would fail for the reasons discussed above in the context of Plaintiff's Title VI and Title IX claims. See Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002) ("the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently").

d.  Count 4 – Race Discrimination under 42 U.S.C. § 1981

In Count Four of the Amended Complaint, Plaintiff alleges that Schoonover and Creeden subjected Plaintiff to racially "discriminatory practices" in violation of 42 U.S.C. § 1981. Defendants urge that this claim must be dismissed because Plaintiff has not alleged any discrimination or interference with respect to her property rights or her right to make and enforce contracts.[12]

---

[12] Alternatively, Defendants urge that Plaintiff's Section 1981 claim must be dismissed because Section 1983 is the exclusive remedy for damages against state actors for violations of Section

Section 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). In order to state a claim under Section 1981, a plaintiff must allege facts in support of the following elements: intent to discriminate on the basis of race by the defendant and discrimination "concerning one or more of the activities enumerated in the statute, which includes the right to make and enforce contracts." Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001).

Contrary to Defendants' assertion, section "1981 is not confined to contractual matters when a governmental entity is involved. Racially motivated misuse of governmental power falls within the ambit of its 'equal benefit' and 'like punishment'" clauses. Hall v. Pennsylvania State Police, 570 F.2d 86, 91 (3d Cir. 1978).

For the purposes of this motion, I will assume that Plaintiff's racially hostile educational environment claim is cognizable under the full and equal benefit clause of Section 1981. See Gant ex rel. Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 140 (2d Cir. 1999) (recognizing a hostile educational environment cause of action under Section 1981 and analyzing the claim

---

1981. Defendants are correct that "the exclusive federal remedy against state actors for violation of rights guaranteed in § 1981 is 42 U.S.C. § 1983." McGovern v. City of Philadelphia, 554 F.3d 114, 116 (3d Cir. 2009) (citing Jett v. Dallas Independent Sch. Dist., 491 U.S. 701, 723, 735 (1989)). However, Count 4 explicitly states that the "Plaintiff's section 1981 claims are asserted against Defendants by way of Section 1983." (Am. Compl. ¶50.)

That said, I do agree with Defendants that Count 4 is duplicative of Count 9, which is captioned as "Section 1983 Violation," to the extent that the allegations supporting Count 9 also state that "Defendants violated Plaintiff's rights under the Civil Rights Act, 42 USC Section 1981, by discriminating against Plaintiff because of her race, while acting under color of state law." (Am. Compl. ¶ 12.) If Plaintiff chooses to file a second amended complaint, she should endeavor to correct this duplicative pleading.

16

under the standards set forth in <u>Davis</u>). However, for the reasons stated above in the context of the analogous claims Plaintiff has brought under Title VI and Title IX, Plaintiff has failed to sufficiently allege severe or pervasive harassment. For that reason, Plaintiff has failed to state a claim under Section 1981.

     e.   <u>Counts 5-8 – Retaliation under Title VI, Title IX, the PHRA and 42 U.S.C. § 1981</u>

Counts Five to Eight of the Amended Complaint are retaliation claims pursuant to Title IX, Title VI, PHRA and Section 1981.[13] Defendants urge that all of the retaliation claims should be dismissed.

In order to establish a prima facie case of retaliation,[14] a plaintiff must show that: "(1) she was engaging in a protected activity; (2) the funded entity subjected her to an adverse action after or contemporaneously with the protected activity; and (3) a causal link between the adverse action and the protected activity." <u>Whitfield</u>, 412 F. Appx. at 522 (citing <u>Peters v. Jenney</u>, 327 F.3d 307, 320 (4th Cir. 2003)). If a plaintiff establishes this prima facie case, then the <u>McDonnell Douglas</u> burden-shifting framework applies. <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 342 (3d Cir. 2006).

     i.   *Protected Activity*

Regarding the first element, acceptable forms of "protected activity" include "formal charges of discrimination 'as well as informal protests of discriminatory employment practices,

---

[13] Count 5 is a retaliation claim brought against Pennridge School District pursuant to Title VI. Count 6 is a retaliation claim brought against Pennridge School District pursuant to Title IX. Count 7 is a retaliation claim brought against all Defendants pursuant to the PHRA. Count 8 is a retaliation claim brought against all Defendants pursuant to Section 1981.

[14] Generally, the same standards apply to retaliation claims under Title VI, Title IX, Section 1981, Section 1983 and the PHRA. <u>See</u> <u>Davis v. Quaker Valley Sch. Dist.</u>, 2016 WL 912297, at *16 (W.D. Pa. Mar. 10, 2016); <u>Toth v. Ca. Univ. of Pa.</u>, 844 F. Supp. 2d 611, 642 (W.D. Pa. 2012); <u>Daniels v. Sch. Dist. of Phila.</u>, 982 F. Supp. 2d 462, 478 (E.D. Pa. 2013).

including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges.'" Barber v. CSX Distribution Servs., 68 F.3d 694, 702 (3d Cir. 1995) (quoting Sumner v. United States Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)). Regardless of the form of the complaint, a plaintiff does not need to "prove the merits of the underlying discrimination complaint" but need only show a "good faith, reasonable belief that a violation existed." Moore, 461 F.3d at 344.[15]

Defendants do not contest that the Amended Complaint sufficiently alleges that Plaintiff engaged in protected activity by making complaints to administrators at Pennridge. Based on the Amended Complaint, Plaintiff alleges that, following the telephone calls in April of 2012, she informed administrators at Pennridge School District about the alleged harassment. (See, e.g., Am. Compl. ¶¶ 22, 27-28.) The Amended Complaint also supports an inference that Plaintiff had a good faith, reasonable basis to believe that a violation of the various state and federal anti-discrimination provisions had occurred. These allegations satisfy the protected activity element of Plaintiff's retaliation claims. See E.N. v. Susquehanna Twp. Sch. Dist., 2011 WL 3608544, at *16 (M.D. Pa. July 5, 2011) ("Complaints of sexual discrimination to school authorities is a protected activity").

### ii.  Adverse Action

Regarding the second element, the allegedly retaliatory conduct must be "materially adverse" meaning that it "might well have dissuaded a reasonable [person] from making or

---

[15] There is some disagreement within this Court as to whether, under Section 1981, a plaintiff must establish an actual underlying violation of Section 1981 rather than merely demonstrating that they had a good faith basis to believe such a violation occurred. See, e.g., Ellis v. Budget Maint., Inc., 25 F. Supp. 3d 749, 752 (E.D. Pa. 2014); Claybourne v. HM Ins. Grp., 2015 WL 7444644 (W.D. Pa. Nov. 23, 2015). Regardless of which standard applies, Plaintiff has failed to state a claim for retaliation for the reasons discussed above.

supporting a charge [or complaint about] discrimination." <u>Burlington Northern & Santa Fe Ry. v.</u> <u>White</u>, 548 U.S. 53, 68 (2006). As such, "petty slights or minor annoyances" are not actionable. <u>Id.</u>

Defendants contend that Plaintiff has not sufficiently alleged that any of the Defendants took any adverse action against her. In response, Plaintiff urges that the Amended Complaint alleges the following actions which constitute adverse action (1) "retaliatory harassment," (2) that Plaintiff was instructed that she should withdraw from Pennridge if she could not cope, (3) her "constructive removal" from Pennridge, and (4) Pennridge's failure to send Plaintiff's transcripts to her new school.[16]

Regarding the first claimed action, Plaintiff correctly notes that harassment can constitute "adverse action." <u>See</u> <u>Moore</u>, 461 F.3d at 341. However, as noted above, retaliatory harassment is actionable only if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Id.</u> (quoting <u>Burlington</u>, 548 U.S. at 67).

Among other incidents, Plaintiff alleges that following her report to Pennridge administrators, her peers discussed the phone calls, once laughed at her during a dance team tryout, took her seat and threw her book bag, and made a rude remark concerning her name. With the exception of the discussions of the telephone calls which allegedly occurred on a few occasions, the Amended Complaint alleges that each of the foregoing incidents occurred once. These allegations of harassment, viewed in the light most favorable to Plaintiff and taken as a whole, do not rise to the level of material adversity because they would not dissuade a reasonable

---

[16] Portions of the Amended Complaint as well as the response to the motion to dismiss appear to suggest that Plaintiff contends that the omission of her name from the awards ceremony constitutes adverse action. This theory fails because the awards ceremony incident is alleged to have occurred during the 2010-2011 school year and the protected activity occurred in April and May of 2012. <u>See</u> <u>Daniels v. Sch. Dist. of Phila.</u>, 776 F.3d 181, 196 (3d Cir. 2015) (disregarding an alleged instance of adverse action as it preceded the protected activity "and therefore was not 'after or contemporaneous with' her protected conduct").

person from making a complaint of discrimination. The Amended Complaint also fails to adequately allege a basis on which to attribute this supposed peer harassment to Defendants.

Plaintiff also alleges that Pennridge's failure to forward her transcripts to her new school constitutes an adverse action. This action likewise is not sufficiently materially adverse.

Lastly, Plaintiff also appears to be pursuing a "constructive expulsion" theory, in essence alleging that the harassment was so substantial and Defendants' response so lacking, that she had no alternative but to withdraw from Pennridge. Such a theory of "adverse action" is fairly novel. See Dawn L. v. Greater Johnstown Sch. Dist., 586 F. Supp. 2d 332, 381 (W.D. Pa. 2008) ("[s]o far as the Court can determine, such a claim would constitute a matter of first impression within the federal system.") However, that fact "is not necessarily an obstacle; Title IX freely borrows the jurisprudence of Title VII and the courts have long recognized an analogous cause of action for constructive discharge under Title VII." Id. (citing Goss v. Exxon Office Sys. Co., 747 F.2d 885, 887 (3d Cir. 1984)).

Even assuming such a theory is viable in the hostile educational environment context, Plaintiff has not alleged sufficient facts to support a "constructive expulsion." Under Title VII, to prove the analogous "constructive discharge" theory, "the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 317 n.4 (3d Cir. 2006) (quoting Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir. 1992)). As noted above, Plaintiff has failed to offer sufficient allegations in support of her hostile educational environment claims. Therefore, her "constructive expulsion" theory of adverse action fails as well.

Even taking the foregoing four incidences of "retaliatory conduct" together, they do not plausibly allege that Defendants took any adverse action against Plaintiff after she complained about the telephone calls she received in April of 2012.[17]

     f.   Count 9 – Section 1983

Count Nine, captioned "Section 1983 Violation," alleges that all Defendants violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment, Section 1981 and the First Amendment.[18] Defendants urge that Plaintiff has failed to state any viable cause of action under 42 U.S.C. § 1983.

     *i.  School District*

First, Defendants argue that Plaintiff's Amended Complaint fails to allege sufficient facts to state a claim against Pennridge School District under Monell.

In relevant part, Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such

_____

[17] Defendants further urged that Plaintiff failed to sufficiently allege a causal connection between her protected activity and the alleged adverse action. I agree and note that the allegations supporting a causal connection between her protected activity and the "retaliatory harassment" are particularly inadequate. There is no basis in the Amended Complaint on which to "infer that defendant intended to perpetrate the student-created hostile environment in order to inflict injury or harm on plaintiff for making complaints about it." S.K. v. N. Allegheny Sch. Dist., 2016 WL 806483, at *11 (W.D. Pa. Mar. 2, 2016) ("The mere possibility that defendant intentionally failed to curb the harassment by plaintiff's fellow students falls short of the plausible showing of intentional conduct needed to identify a form of materially adverse action needed to state a claim for retaliation").

[18] Plaintiff's articulation of this Section 1983 claim is somewhat confusing. Count 9 variously mentions the Equal Protection Clause of the Fourteenth Amendment, Section 1981 and the First Amendment and does so without any real explanation as to the factual underpinnings of those discrete violations.

officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Section 1983 "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979).

A municipality may be held liable for its employee's violation of an individual's constitutional rights under Section 1983, although not on a respondeat superior theory of liability. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-92 (1978). To prevail on a Monell claim, a plaintiff must show a policy or custom created by a policymaker that caused the alleged constitutional violation. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003) (citing Bd. of the Cnty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)).

A plaintiff "must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990). While Plaintiff need not specifically identify a policymaker by name, id., the Third Circuit has held that the failure to allege that any policymaker was aware of or acquiesced to the allegedly unconstitutional conduct is fatal to a Monell claim. McTernan v. York, 564 F.3d 636, 658-59 (3d Cir. 2009).

Defendants urge that the Amended Complaint fails to allege any basis for inferring that the alleged sex or race discrimination was the result of Pennridge School District's policy or custom. I agree that the Amended Complaint does not contain any factual allegations as to the nature of the custom or policy to which Pennridge School District allegedly adhered or how that policy or custom caused the constitutional violations Plaintiff alleges. As such, Plaintiff has failed to state a claim against Pennridge School District.

*ii. Individual Defendants*

Next, Defendants urge that the Amended Complaint fails to state a Section 1983 claim against Creeden and Schoonover as it is completely devoid of any allegations that they were personally involved in the alleged violations of the Equal Protection Clause, Section 1981[19] and the First Amendment.

When a plaintiff brings a Section 1983 claim against a defendant in his or her individual capacity, the plaintiff must establish that the defendant had "personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be demonstrated through "allegations of personal direction or of actual knowledge and acquiescence." Id.

The Amended Complaint contains a single reference to the First Amendment. To the extent that Plaintiff is pursuing a First Amendment Retaliation claim, such a claim fails for the same reasons that Plaintiff's retaliation claims brought pursuant to Title VI, Title IX, Section 1981 and the PHRA fail. As discussed above, the Amended Complaint fails to adequately allege that Defendants took an adverse action against Plaintiff.

Lastly, Plaintiff fails to state a claim under the Equal Protection clause because the Amended Complaint fails to allege that Defendants Schoonover or Creeden personally treated her differently than other similarly situated individuals or that they did so purposefully. Andrews v. City of Philadelphia, 895 F.2d 1469, 1478 (3d Cir. 1990) ("[t]o bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. They must demonstrate that they receiv[ed] different treatment from that received by other individuals similarly situated.")

---

[19] For the reasons stated above in the context of Count 4 (Section 1981 – hostile educational environment) and Count 8 (Section 1981 – retaliation), Plaintiff has failed to state a claim under Section 1981.

**IV.**   **CONCLUSION**

For the above reasons, Defendants' motion to dismiss is granted without prejudice. An appropriate Order follows.